UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

The Antioch Co.,

Plaintiff,

vs. MINUTE ORDER

Scrapbook Borders, Inc., Lisa DeBonoPaula a/k/a Lisa dePaula, and Luis DeBonoPaula d/b/a Solrac Enterprises,

Defendants. Civ. No. 02-100 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 29th day of April, 2002.

## I. Introduction

On April 17, 2002, the Court heard argument on the Defendants' Motion to Stay Proceedings, the Plaintiff's Motion for Issuance of an Order for Preservation of Records, the Plaintiff's Motion to Expedite Discovery, and the Plaintiff's Motion to Compel and Appoint a Neutral Expert in Computer Forensics. At the time of the Hearing, the Plaintiff, The Antioch Co. ("Antioch"), appeared by Gina M. Tiefenthaler, Esq., and the Defendants Lisa DeBonoPaula ("Lisa"), and Luis DeBonoPaula ("Luis"), appeared pro se. Lisa and Luis also purported to represent the Defendant Scrapbook Borders,

FILED APR 29 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Inc. ("Scrapbook").[1] For reasons expressed during the course of the Hearing, and briefly reiterated below, deny the Defendants' Motion, without prejudice, and we grant the Plaintiff's Motions.

## II. Discussion

This is an action for copyright infringement, under Federal Law, and unfair competition, under both Federal and State law.

[1]As we explained at the Hearing, Scrapbook has not technically made an appearance in this case, as the Answer of all the Defendants was signed by the individual Defendants pro se. Under the controlling precedent of this, and other Circuits, however, a corporation may not be represented pro se. See, Simitar Entertainment, Inc. v. Silva Entertainment, 44 F. Supp.2d 986, 990 (D. Minn. 1999), quoting Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996)(explaining that a corporation was technically in default from the date that its counsel was permitted to withdraw without substitution); see also, United States v. Lylalele, 221 F.3d 1345, 2000 WL 688237 at *1 (8th Cir. May 30, 2000)[Table Decision]("corporations and trusts cannot appear in federal court without legal representation"), citing Knoefler v. United Bank, 20 F.3d 347, 348 (8th Cir. 1994), and United States v. Van Stelton, 988 F.2d 70, 70 (8th Cir. 1993). Further, it is also firmly established that a layperson may not represent a corporation in judicial proceedings, as a corporation may only appear by legal counsel. See, Simitar Entertainment, Inc. v. Silva Entertainment, supra at 990, citing Mendenhall v. Goldsmith, 59 F.3d 685, 687 n.1 (7th Cir. 1995)(dismissing appeal filed by layperson on behalf of corporation), and In re America West Airlines, 40 F.3d 1058, 1059 (9th Cir. 1994) ("Corporations and other unincorporated associations must appear in Court through an attorney."). Even sole shareholders of corporations are prohibited from representing such corporations pro se. See, Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2nd Cir. 1990); Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985); In re K.M.A., Inc., 652 F.2d 398, 399 (5th Cir. 1981); Capital Group, Inc. v. Gaston & Snow, 768 F. Supp. 264, 265 (E.D. Wis. 1991). Thus, we urge the Defendants to retain counsel to, at the very least, defend Scrapbook in this action, or else the Court may have to consider a Motion for Default Judgment against the corporation.

Specifically, Antioch has a division called Creative Memories which creates and produces a wide variety of original scrap book accessories and related decorative materials. As part of that business, Antioch owns several copyrights, including a copyright for original decorative sticker designs, which are marketed through Creative Memories. These accessories and related decorative materials are sold, pursuant to individual written agreements, to independent consultants who, in turn, sell them to the public at large. Antioch claims that Scrapbook has been infringing on their copyright by selling products which include some of Antioch's copyrighted work, without Antioch's permission, even though Antioch advised it to cease and desist in October of 2000. Lisa, who used to be a Creative Memories Independent Consultant, is the president and director of Scrapbook, and Luis is a director of Scrapbook, and does business as Solrac Enterprises, which publishes Scrapbooks' products.[2]

II. Discussion

A. The Defendants' Motion to Stay Proceedings. The Defendants have moved to stay these proceedings, in accordance with the Soldiers' and Sailors' Civil Relief Act of 1940, Title 50 App.

[2]The Defendants have also moved to transfer this case to the Northern District of Florida, as the individual Defendants reside in Florida, and Scrapbook is a Florida Corporation. The Motion to Transfer was to be heard by the District Court, the Honorable Michael J. Davis presiding, on June 14, 2002, but has now been referred to this Court for a recommended disposition.

U.S.C. §521, because Luis is an active member of the United States Air Force. As part of their Motion, they explain that "[Luis] currently deploys on Air Force related missions approximately [two] weeks a month * * *," and "[h]is military commitments are causing his inability to defend himself in this matter." Motion to Stay Proceedings, at 1. In fact, when they transmitted this Motion to the Court, which was mailed on March 12, 2002, Luis was, apparently, on a mission in South America for an "unspecified length of time * * *" and, according to his commander, "he comes home when the mission is done." Id. at 2.

Section 521 provides as follows:

> At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on applica-ion to it by such person or some person on his behalf, be stayed as provided in this Act [sections 501 to 591 of this Appendix], unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.

As the Supreme Court instructed, in Boone v. Lightner, 319 U.S. 561, 574 (1943):

> The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own

> affairs to take up the burdens of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from the service. Absence when one's rights or liabilities are being adjudged is usually prima facie prejudicial. But in some few cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use.

Thus, while a weighty consideration, "[t]he Act cannot be construed to require continuance on mere showing that the defendant was * * * in the military service." Id. at 565; see also, Gross v. Williams, 149 F.2d 84, 86 (8th Cir. 1945)("The mere fact of service in the armed forces of the United States does not entitle a party to a stay of proceedings against him as a matter of right.").

The Act itself does not evidence Congress' intention as to who should carry the burden for showing that the military service does, or does not, materially affect an individual's ability to prosecute or defend against an action. See, Title 50 App. U.S.C. §521. The Supreme Court similarly refrained from "declaring any rigid doctrine of burden of proof in this matter, believing that courts called upon to use discretion will usually have enough sound sense to know from what direction their information should be expected to come." Boone v. Lightner, supra at 561.

Two considerations, which Courts have consistently observed in deciding Motions to Stay under the Act, include whether or not the serviceperson is stationed overseas, or in the States, see, Rogers v. Tangipahoa Parish Sheriff's Office, 1997 WL 466922 at *1 (E.D. La. August 8, 1997)("Recent correspondence from his superiors to plaintiff['s] counsel indicates that plaintiff will be temporarily reassigned to the United States around the time of his trial * * *."); Fleet Mortgage Corp. v. Hansen, 1991 WL 134183 at *1 (N.D. Ill. July 2, 1991)("While [the defendant] is presently stationed overseas, he expects to be stationed in California or North Carolina by this fall."); Page v. Villa-Real, 1987 WL 10873 at *2 (D.D.C. May 5, 1987)("However, recent decisions under the Act have denied stays where, as here, the party in the military is not overseas, and can easily arrange for a furlough or leave in order to participate in the case."), and cases cited therein, and whether or not the serviceperson has exercised diligence or good faith in pursuing alternatives other than a stay of the case, see, Boone v. Lightner, supra at 570-73; Hackman v. Postel, 675 F. Supp. 1132 (N.D. Ill. 1988)("Where a court determines that a serviceman did not exercise due diligence in attempting to make himself available for trial, then the court may determine that the movant's military service did not affect his ability to conduct his defense."); Page v. Villa-Real, supra at *2 ("However, recent decisions under the

Act have denied stays where, as here, the party in the military is not overseas, and can easily arrange for a furlough or leave in order to participate in the case."); <u>Bowsman v. Peterson</u>, 45 F. Supp. 741, 742 (D. Neb. 1942)("[T]o be a sufficient ground for a continuance, it must appear that the absence of a party is unavoidable and not voluntary, that the party's presence is necessary, that the application is made in good faith, and that the party will be able to attend at some reasonable further time." [citations omitted]). Rather, as the Minnesota Supreme Court has explained:

> The relief act of 1940 (and likewise the similar act of 1918) was enacted to give the soldier-litigant a shield for defense and not a sword for attack. It was to enable him to serve his country secure in the knowledge that his bona fide civil rights would not be jeopardized in any legal proceeding by reason of his military service. It was not intended to vest him with juridical weapons of offense which he would not have possessed had he remained a civilian. It was likewise not intended that the statutory shield should be used as a screen behind which to engage in legal maneuvers born of policy or of bad faith. In short, it was intended that the serviceman who applies to the court for a stay of legal proceedings under the act must assert bona fide rights and exercise good faith.

<u>Luckes v. Luckes</u>, 71 N.W.2d 850, 853 (Minn. 1955).

As such, some Courts have summarily denied requests for a stay in circumstances, such as involved in this case, where the service-person has only related that he is unable defend an action, without any real evidence to support the contention. See, e.g., <u>Branch v.</u>

Stukes, 2001 WL 1550903 at *1 (S.D.N.Y. December 5, 2001)(denying Motion to Stay, without prejudice, after noting that "Farrell's current application, which was made by letter dated November 9, 2001, does nothing more than recount that Farrell is currently in military service and is stationed overseas"); Fleet Mortgage Corp. v Hansen, supra at *1 ("Defendant, however, does no more than merely assert that he is in the military.").

Here, we conclude, after a careful weighing of the circumstances, that a stay is not required, under the Act, at least on the present Record. While it is true that Luis is in active service in the Air Force, his Motion clearly substantiates that he is stationed in the United States, and "[h]e currently deploys on air force related missions approximately [two] weeks a month." Motion to Stay Proceedings, at 1. Presumably, then, except when out of the country on temporary assignments, he is in the United States at least two weeks per month. Certainly, the parties to this action can work together so as to assure that scheduling of depositions, or discovery deadlines, provides Luis with enough time and notice to appropriately accommodate his military schedule.

Moreover, there is no showing that Luis will not be able to obtain a leave for any potential Trial, or even for depositions. We reiterate though, that in no circumstance will the Court proceed with a Hearing, in Luis' absence, assuming the absence is due to

his military commitments, unless he consents to our doing so. We caution the Defendants, though, to keep both the Plaintiff, and the Court, informed of any situations which might cause Luis to be unable to attend to the affairs of this case. Thus, on this Record, we deny the Defendants' Motion to Stay the proceedings, but without prejudice to its renewal, if necessary, at a later date.[3]

B. The Plaintiff's Motions.

The Plaintiff's Motions are largely based on the same premise; namely, that the Defendants have, or will, destroy relevant documents and materials. Therefore, we will outline the positions of each of the parties on each Motion, but combine our analysis of all three.

1. The Plaintiff's Motion for Issuance of an Order for Preservation of Records.

Antioch seeks an Order directing all parties to this litigation, as well as their officers, agents, servants, employees,

---

[3]Even if we were to grant the Defendants' Motion, based on Luis' military service, we do not believe that the stay, at least as to pretrial discovery and proceedings, would extend to Lisa, since she is not covered by the Act, and her role in the litigation appears to be more substantial than Luis' involvement. See, e.g., Forcier v. EPA, 2002 WL 368525 at *2 (N.D. Tex. March 5, 2002) ("This history, coupled with the fact that all Defendants are represented by the same counsel, militates against staying pretrial deadlines for all Defendants and minimizes Defendants' fear that '[w]ithout Major Benton's involvement, information provided in such discovery would be incomplete and could be incorrect * * *,'" as "[a]ny void in the evidence gathered through discovery can be filled through the filing of supplements to discovery.").

and attorneys, to preserve all documents relevant to the action. Antioch has submitted this Motion because it is "apprehensive and harbors concerns that these documents may be intentionally altered, destroyed, 'lost' or otherwise spoiled by the Defendants." Memorandum in Support of Plaintiff's Motion for Issuance of an Order for Preservation of Records, at 1. Specifically, Antioch relates that Lisa had, at some point, advised it that the Defendants would be "going out of business" soon, which caused Antioch concern that, through the sale or closure of the business, records might be lost or destroyed. See, Ex. A to Affidavit of Gina M. Tiefenthaler [Docket No. 6]. Moreover, Lisa had agreed, in mid-February, that Antioch's attorney could come and view Scrapbook's records but, when the attorney arrived with a computer professional to copy the hard drives of the Defendants' computers, Lisa vacillated, and ultimately advised that the computer professional could not copy the hard drives. See, Affidavit of Gina M. Tiefenthaler, at ¶¶6-10[4] [Docket No. 6]. Antioch's attorney was allowed to review Scrapbook's paper files, and she noted that one of Scrapbook's largest customers had only a small file, comprised of two pieces of paper, while other customer files were quite thick. Id. at ¶¶12-

[4]Lisa complains that she did not know, until the day before Antioch's attorney arrived, that the attorney was bringing a computer person, and did not find out until they arrived that the computer person was going to copy her hard drives.

13.[5] Antioch also believes that Scrapbook, and Lisa, hold much resentment toward Antioch, which could result in their destroying documents which are pertinent to this case, and that the Defendants appearance, pro se, may impair Antioch, as the Defendants may not "appreciate the nature of the discovery process." Memorandum in Support of Plaintiff's Motion for Issuance of an Order for Preservation of Records, at 4.

Nonetheless, the Defendants now advise that they are not going out of business but, rather, "are forced to cut back current production and new product development because of the costs involved in defending this lawsuit, but [they] are not going out of business." Defendants' Response to Plaintiff's Motion to Expedite Discovery, at 1. However, they do not oppose an Order requiring the preservation of documents, and advise that they have not, and will not, destroy any records. Id. Accordingly we grant this Motion and instruct all parties to preserve relevant documents and materials until further Order of the Court.

---

[5]While Antioch appears to be implying that Scrapbook has already destroyed, or hidden some records, Lisa advises that the company in question owns three stores, and most of the paperwork is filed under one of the other stores. Thus, according to Lisa, Antioch "just didn't look in the right place, nor did [Antioch's attorney] ask [Lisa] anything about it." Defendants' Response to Plaintiff's Motion for Issuance of an Order for Preservation of Records, at 3.

2. The Plaintiff's Motion to Expedite Discovery.

The basis of this Motion is the same as the previous Motion: Antioch believes that the Defendants may destroy, inadvertently or intentionally, documents relevant to this cause of action and, therefore, it seeks permission to conduct discovery prior to the conduct of a Rule 26(f) conference. See, Rule 26(d), Federal Rules of Civil Procedure ("Except in categories of proceedings exempted from initial disclosures under Rule 26(a)(1)(E), or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."). Of note, however, there is currently a Motion to Transfer, pending in this matter, which has been referred for our recommended disposition.

The Defendants do oppose this Motion to Expedite, as well as the Motion to Compel Discovery and Appoint a Neutral Expert in Computer Forensics. The reason for their opposition is that they have not been afforded a chance to even respond to the Plaintiff's document requests before intervention by the Court. Moreover, they contend that the parties are direct competitors, and that their computers store information relevant to their ideas for the development of future products. Thus, the Defendants maintain that the discovery into their computers' hard drives, which appears to be the main issue for the Plaintiff, would reveal many irrelevant or

privileged items. Finally, the Defendants may have misapprehended the Motions currently before the Court, as they appear to express concern that their Motion to Stay would not be heard prior to the Plaintiff's Motion. Having ruled on the Motion to Stay, however, that concern is not justified.

3. The Plaintiff's Motion to Compel Discovery and Appoint a Neutral Expert in Computer Forensics.

Even though there is currently no Scheduling Order in force, and formal discovery has not yet begun, Antioch seeks an Order compelling the Defendants to produce computer equipment for purposes of investigation, copying, imagining, and interrogation, by a Court-appointed computer forensics expert. Antioch seeks this Order because, in addition to the reasons previously addressed, it contends that data from a computer which has been deleted remains on the hard drive, but is constantly being overwritten, irretrievably, by the Defendants' continued use of that equipment. Therefore, in order to ensure the recovery, and preservation, of such information, Antioch has proposed that a neutral computer expert retrieve the stored data, although Antioch suggests "Ontrack Data International, Inc." ("Ontrack"). Moreover, Antioch has offered to bear the costs of this discovery.

The procedure suggested by Antioch is that the Defendants be required to make their computer equipment available for copying by

a computer expert. Thereafter, once Antioch makes a discovery request, Ontrack will search the data it has obtained to locate words, phrases, data, documents, messages, or fragments that are responsive to the request. According to Antioch, discovery in this case would be limited to the period from January 1, 1998, through the present, and Ontrack would not review any data outside the relevant period, or search parameters.

Once Ontrack has conducted a search, Antioch's proposed procedures would proceed in one of two ways. The first is that Ontrack would forward the documents to both parties, marked as "Attorneys' Eyes Only." The Defendants would then have ten days to review the documents, and assert any privilege. If there were to be a claim of privilege on any document, Antioch would return that document to Ontrack, and Ontrack would maintain a privilege log. Then, if there were a dispute as to privilege, either party could bring the disagreement to this Court for resolution.

The second approach would require Ontrack to first submit its findings to the Defendants, who would have ten days in which to review the documents forwarded to them by Ontrack. After that time, the Defendants would produce all responsive, non-privileged documents to Antioch. All documents as to which the Defendants claim a privilege would then be reviewed by this Court, in camera.

Any documents which we deemed to be non-discoverable would be returned to Ontrack, who would maintain a privilege log.

4. Legal Analysis.

First, with respect to the Plaintiff's Motion for an Order requiring preservation of Records, as we have already noted, the Defendants do not oppose the Motion and, therefore, we grant the Motion.

Next, as to the Plaintiff's Motion to Expedite Discovery, although the parties have not yet held a Rule 26(f) conference, and we, as of yet, have not scheduled a Pretrial Conference, we nonetheless conclude that expedited discovery is appropriate in this instance. As yet, the Conference has been deferred owing to the Defendants' Motion to Transfer, which will soon be brought on for a Hearing and, further, not all of the parties have made an appearance in the action -- as Scrapbook has not yet filed its own Answer. However, we find that discovery should commence, in order to ensure that computer records are preserved, and to provide sufficient leeway to complete discovery, or at least advance it, in the event that Luis' military situation changes, and requires a stay or a delay of the proceedings, as they pertain to him. As we explained to the Defendants' at the Hearing, though, our grant of the Plaintiff's Motion does not mean that they will be required to respond to discovery with less time than allowed by the Federal

Rules, but only that the process of discovery will commence earlier than would usually be the case. Therefore, we grant the Plaintiff's Motion to Expedite Discovery.

Lastly, with respect to the Plaintiff's Motion to Appoint a Neutral Expert in Computer Forensics, Antioch has proffered some evidence that the Defendants use e-mail as a form of communication for their business, see, Ex. 31 to Affidavit of Gina M. Tiefenthaler [Docket No. 17], and Ex. 2 to Plaintiff's Memorandum in Opposition to Defendants' Motion to Stay Proceedings, and the Defendants have not denied that use. In addition, Antioch has also provided the Affidavit of Lawrence M. Larsen, of the Forensic Service Division of Renew Data Corp., in which he attests that data which is deleted from a computer is retained on the hard drive, but is constantly being overwritten by new data, through the normal use of the computer equipment. Accordingly, we conclude that the Defendants may have relevant information, on their computer equipment, which is being lost through normal use of the computer, and which might be relevant to the Plaintiff's claims, or the Defendants' defenses. This information may be in the form of stored or deleted computer files, programs, or e-mails, on the Defendants' computer equipment.

As the Advisory Committee Notes to Rule 34, Federal Rules of Civil Procedure make clear, discovery of "documents" "applies to

electronic data compilations from which information can be obtained only with the use of detection devices." Moreover, it is a well accepted proposition that deleted computer files, whether they be e-mails or otherwise, are discoverable. See, Rowe Entertainment, Inc. v. The William Morris Agency, Inc., 205 F.R.D. 421, 427, 431 (S.D.N.Y 2002)(stating that "[e]lectronic documents are no less subject to disclosure than paper records," and only questioning who should bear the cost of such discovery, especially for back-up tapes or deleted e-mails); McPeek v. Ashcroft, 202 F.R.D. 31, 31, 34 (D.D.C. 2001)(declaring that, "[d]uring discovery, the producing part has an obligation to search available electronic systems for information demanded," and ordering a limited back-up restoration of e-mails); Kleiner v. Burns, 2000 WL 1909470 (D. Kan. December 15, 2000)(noting that Rule 26(a)(1)(B) requires description and categorization of computerized data, including deleted e-mails, and stating that "[t]he disclosing party shall take reasonable steps to ensure that it discloses any back-up copies of files or archival tapes that will provide information about any "deleted" electronic data"); Simon Property Group L.P. v. mySimon, Inc., 194 F.R.D. 639, 640 (N.D. Ill. 2000) ("First, computer records, including records that have been 'deleted,' are documents discoverable under Fed.R. Civ.P. 34."); Playboy Enterprises v. Welles, 60 F. Supp.2d 1050, 1053 (S.D. Cal. 1999)("Plaintiff needs to access the hard drive of

Defendant's computer only because Defendant's actions in deleting those e-mails made it currently impossible to produce the information as a 'document.'").[6] Thus, we conclude that deleted information, on the Defendants' computer equipment, may well be both relevant and discoverable.

As a consequence, we conclude that Antioch should be able to attempt to resurrect data which has been deleted from the Defendants' computer equipment, and therefore, we grant its Motion to Compel.[7] In order to enforce our Order, Antioch has proposed two

---

[6]The main issues in these cases was who should bear the burden of reconstructing lost data. See, e.g., Rowe v. Entertainment, Inc. v. The William Morris Agency, Inc., 205 F.R.D. 421, 431 (S.D.N.Y. 2002)("Thus, since there has been no showing that the defendants access either their back-up tapes or their deleted e-mails in the normal course of business, this factor tips in favor of shifting the costs of discovery to the plaintiffs."); McPeek v. Ashcroft, 202 F.R.D. 31, 34 (D.D.C. 2001)(ordering limited efforts at recovery of deleted data in order to assess the recoverability of relevant information, in light of the cost of such recovery, in order to determine the scope of further efforts); Playboy Enterprises, Inc. v. Welles, 60 F. Supp.2d 1050, 1053 (S.D. Cal. 1999)(stating that discovery of electronic data is appropriate, and the only concern is that "the producing party be protected against undue burden and expense and/or invasion of privileged matter"). Such a concern is not present here, as Antioch has agreed to bear the cost of recovering deleted computer data. See, Memorandum in Support of Plaintiff's Motion to Compel Discovery and Appointing a Neutral Expert in Computer Forensics, at 2.

[7]Our Order, and the procedure we will outline, applies only to deleted information on the Defendants' computer equipment. The Defendants have the responsibility of producing computer information that they have access to and, although the Plaintiff doubts the Defendants' accountability, we conclude that there has not been
(continued...)

separate procedures, which we have previously outlined. This is not an novel issue and, when faced with a similar question, concerning the recovery of deleted computer files, the Court, in Playboy Enterprises v. Welles, supra at 1054, provided for a slightly different procedure. The Court first required the plaintiff to submit an affidavit from a computer expert regarding the feasibility of recovering deleted e-mails. Id. If the plaintiff was able to provide evidence that "recovering some deleted e-mail is just as likely as not recovering any deleted e-mail, and that no damage will result to Defendant's computer, the Court will direct the parties to follow the outlined protocol." Id. at 1055. The Court would appoint a computer expert who specialized in the field of electronic discovery to create a "mirror image" of the defendant's hard drive. The Court would then select the expert based on the parties' agreement, or their suggestions, if they could not agree. Id. A Protective Order would subsequently be entered, signed by the computer specialist. The computer specialist would then attempt to recover a "mirror image" of the hard drive, in the presence of only the defendant, and at the defendant's convenience. After a copy was made, it would be given to defendant's counsel,

---

(...continued)
a showing that the Defendants are unwilling to produce relevant evidence, that has not been deleted from their computer equipment.

who would print and review any recovered documents for production to the plaintiff of those that are relevant, and non-privileged. All privileged documents would be placed on a privilege log. Id. The Court further directed that the defendant's counsel would be the sole custodian of the recovered mirror copy of the hard drive. Id.

A similar approach was adopted in Simon Property Group L.P. v. mySimon, Inc., supra at 641-42. The only differences were that the expert was required to make a report to the Court, regarding the scope of the work performed, and a description, in general terms, of the volume and type of records provided to defendant's counsel. The expert was also, to the extent possible, supposed to provide defendant's counsel with any available information showing when any recovered "deleted" file was deleted, and the available information about the deletion and contents of any deleted file that could not be recovered. Id. at 641. Moreover, any communication between the expert and plaintiff's counsel was to be in the presence of the defendant's counsel, and the expert was to maintain a copy of the "mirror image" until the conclusion of litigation. Id. at 642.

We conclude that a similar procedure is necessary here, and we fashion ours as an amalgamation of the above two. First, Antioch will select an expert of its choice, in the field of computer

forensics ("the Expert"), to produce the "mirror image" of the Defendants' computer equipment. Once the Expert is chosen, Antioch will notify the Defendants, and the Defendants will make available to the Expert, at their place of business, and at a mutually agreeable time, all of their computer equipment. The Expert will use its best efforts to avoid unnecessarily disrupting the normal activities or business operations of the Defendants while inspecting, copying, and imaging, the Defendants' computer equipment, up to and including the retention of the computer equipment on the Defendants' premises. Moreover, the only persons authorized to inspect, or otherwise handle such equipment, shall be employees of the Expert assigned to this project. No employee of Antioch, or its counsel, will inspect or otherwise handle the equipment produced. The Expert will also maintain all information in the strictest confidence.

Within ten days of its inspection, copying, and imaging, of the computer equipment produced by the Defendants, the Expert shall provide the parties with a report as to what computer equipment was produced by the Defendants, and the actions taken by the Expert with respect to each piece of computer equipment. This report shall include a detailed description of each piece of computer equipment inspected, copied, or imaged, by the Expert, including the name of the manufacturer of the equipment and its model number

and serial number; the name of the hard drive manufacturer and its model number and serial number; and the name of any network card manufacturer and its model number, serial number, and MAC address wherever possible. The Expert shall document the chain of custody for any copies and images drawn from the equipment. These reports shall be produced to both of the parties.

Once the Expert has created copies and images of the Defendants' hard drives, it will produce two copies of the resulting data. One copy will be transmitted to the Court, and the other copy will be transmitted to the Defendants. Thereafter, once Antioch propounds any document requests, the Defendants will sift through the data provided by the Expert to locate any relevant documents. The Defendants shall then produce to Antioch all responsive documents that are properly discoverable, as well as a privilege log, which describes the nature of any privileged documents or communications, in a manner that, without revealing information that is privileged or protected, will enable Antioch to assess the applicability of the privilege or protection claimed. At that time, the Defendants shall also forward the privilege log to the Court for potential _in camera_ review.

Once it has reviewed the documents produced by the Defendants, as well as the privilege log, if the Plaintiff raises a dispute as to any of the documents, by providing a cogent basis for doubting

the claim of privilege, or for believing that there are further relevant documents, the Court will conduct an in camera review, limited to the issues raised. This procedure will govern the recovery of deleted information from the Defendants' computers unless and until modified by a Court of competent jurisdiction.

With this procedure in mind, we direct the parties to "meet and confer" on an appropriate time for the Expert to access the Defendants' computer equipment, keeping in mind our directive to minimize the burden and inconvenience caused to the Defendants. To that extent, we grant the Plaintiff's Motion to Compel, and to Appoint a Neutral Expert in Computer Forensics.

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendants' Motion to Stay Proceedings [Docket No. 3] is DENIED, without prejudice to its renewal, if necessary, at a later date.

2. That the Plaintiff's Motion for Issuance of an Order for Preservation of Records [Docket No. 4] is GRANTED.

3. That the Plaintiff's Motion to Expedite Discovery [Docket No. 7] is GRANTED.

4. That the Plaintiff's Motion to Compel and Appoint a Neutral Expert in Computer Forensics [Docket No. 10] is GRANTED, as more fully explained in the text of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE